UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GHANIA MILLER,

                Plaintiff,              05-CV-0478(Sr)

v.

S. DURFEE, Deputy Administrator and
Acting Superintendent, S. FURLANI,
Education Supervisor and Hearing
Officer, SGT. FROST, Sergeant, T. STICKNEY,
Correction Officer, individually and in their
official capacities,
                Defendants.

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. #16.

Plaintiff filed this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983.  Dkt. #1.  Plaintiff alleges that she was denied procedural due process at a December 8, 2004 disciplinary hearing.  *Id*.  Plaintiff further alleges that, notwithstanding the reversal of the hearing officer's determination and the expungement of her disciplinary record, the penalty imposed following the finding of guilt, *to wit*, two months keeplock confinement, two months loss of recreation, packages, commissary and phone privileges, and the time she served in the Special Housing Unit, forty-nine (49) days, violated her due process rights.  *Id*.  In her

complaint, plaintiff seeks the following relief: (1) injunctive relief in the form of training to be provided to the defendants concerning "gang signs"; (2) $7,350 in compensatory damages; (3) $47 in lost wages; and (4) $1 in "nominal damages." *Id*.

Currently before the Court is plaintiff's motion to strike defendants' answers to the complaint and for summary judgment (Dkt. #34) and defendants' cross motion for summary judgment (Dkt. #39).  For the following reasons, defendants' cross-motion for summary judgment is granted and plaintiff's motion to strike defendants' answers to the complaint and for summary judgment is denied as moot.

## **FACTUAL BACKGROUND**

Plaintiff, proceeding *pro se*, filed this action on July 11, 2005, pursuant to 42 U.S.C. § 1983, seeking injunctive relief, compensatory damages, lost wages and punitive damages for a violation of her constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution during her period of incarceration at the Albion Correctional Facility ("Albion").  Dkt. #1.  Specifically, plaintiff complains that on December 6, 2004, while she was incarcerated at Albion, Sergeant Frost, while making rounds in plaintiff's housing unit with Officer Stickney, ordered Officer Stickney to confiscate a photograph on plaintiff's board because it was "gang-related" and further ordered Officer Stickney to issue plaintiff a misbehavior report for possession of gang-related contraband.  *Id*. at ¶ 14.  Plaintiff further alleges that Sergeant Frost failed to properly investigate the matter.  *Id*.  According to plaintiff,

defendant Furlani, in conducting the disciplinary hearing, failed to take plaintiff's testimony into consideration and improperly considered plaintiff's disciplinary record as part of the evidence in reaching his determination.  *Id*.  Finally, defendant Durfee is alleged to have had or should have had some knowledge and/or notice of the practices and procedures employed by the officials at Albion.  *Id*.

At all times relevant to the allegations in the complaint, plaintiff was in the custody of the New York State Department of Correctional Services and was confined at Albion located in Albion, New York.  Dkt. #1, ¶ 2.  Defendants were assigned to the Albion Correctional Facility.  Dkt. #40, ¶ 2.  Specifically, at all times relevant to the allegations in the complaint, defendant Sandra Durfee ("Durfee") was serving as the Acting Superintendent of Albion (Dkt. #41, ¶ 1), defendant Steven Furlani ("Furlani") was employed as an Education Supervisor at Albion (Dkt. #42, ¶ 1), defendant Frost ("Frost") was employed as a Sergeant at Albion (Dkt. #11, ¶ 3) and defendant T. Stickney ("Stickney") was employed as a Corrections Officer at Albion (Dkt. #12, ¶ 3).

On December 6, 2004, plaintiff was housed in unit K-2, cube #3.  Dkt. #1, ¶ 14; Dkt. #40, ¶ 15.  At approximately 6:55 p.m., on December 6, 2004, defendants Frost and Stickney were making rounds in housing unit K-2 and observed a photograph on the wall in cube #3 of a person purportedly showing a gang sign.  Dkt. #1, ¶ 14; Dkt. #40, ¶ 14.  Defendant Frost ordered defendant Stickney to confiscate the photograph because it was gang-related and to issue a misbehavior report and a contraband receipt.  Dkt. #1, ¶ 14; Dkt. #40, ¶¶ 16-17.  Thereafter, defendant Stickney issued

plaintiff an Inmate Misbehavior Report charging plaintiff with violating Rule 105.12 Unauthorized Organizations/Activity. Dkt. #40, ¶ 13. Specifically, the Inmate Behavior Report states:

> On the above date and time [12/6/04, approximately 6:55 p.m.], while making rounds, I saw a picture on the wall in cube #3 of a person showing gang signs with his hands. Inmate Miller 95G0491 is housed in cube #3. A contraband receipt was given for the picture. The picture and contraband receipt are attached to this report.

Dkt. #1, p.22. Plaintiff was served with a copy of the Inmate Misbehavior Report on or about December 7, 2004. Dkt. #1, p.26; *but see*, Dkt. #40, ¶ 19 (stating that plaintiff was served with a copy of the Misbehavior Report on December 8, 2004). According to the Case Data Worksheet which was signed by plaintiff, plaintiff was advised of the availability of Chapter V Inmate Standards-Behavior and Allowances and was advised of her right to have witnesses testify on her behalf. Dkt. #26, p.14; Dkt. #40, ¶ 19; Dkt. #42, ¶ 7. The Case Data Worksheet further reveals that plaintiff declined assistance in preparing for the hearing and did not identify any witnesses to be called to testify at the hearing. Dkt. #26, p.14; Dkt. #40, ¶¶ 20 and 24; Dkt. #42, ¶ 7.

Plaintiff's Tier III[1] disciplinary hearing was conducted on December 8, 2004 and commenced at approximately 9:35 a.m. and concluded at approximately 9:50 a.m. Dkt. #26, p.10. From time to time, defendant Education Supervisor Furlani's

---

[1] "Tier III hearings concern the most serious violations and may result in unlimited SHU confinement (up to the length of the sentence) and recommended loss of 'good time' credits." *Hynes v. Squillace*, 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907 (1998).

duties included conducting inmate disciplinary hearings as the Superintendent's designee pursuant to 7 N.Y. Comp. R. & Regs. § 254.1.  Dkt. #40, ¶ 11.  Indeed, defendant Furlani  presided over plaintiff's December 8, 2004 Tier III disciplinary hearing.  Dkt. #26, pp. 10-11.  Plaintiff maintains that she testified at the disciplinary hearing that she "never was in any [sic] gang in [sic] the street prior to [her] arrest, and never was in any [sic] gang since [her] incarceration."  Dkt. #1, ¶ 14.  Plaintiff alleged in her complaint that defendant Furlani failed to consider her testimony at the hearing.  *Id*.  Conversely, defendant Furlani claims that page two of the Superintendent Hearing Disposition Rendered Form contains the following statement of the evidence relied upon, "[t]he report written by CO. Stickney and picture attached as well as the inmates [sic] testimony and past disciplinary record."  Dkt. #26, pp.11; Dkt. #42, ¶ 9.  Although as reflected on the Superintendent Hearing Disposition Rendered Form, defendant Furlani considered plaintiff's testimony in making his determination, with respect to plaintiff's denial of any involvement in gang activity, defendant Furlani did not find that testimony to be credible.  Dkt. #42, ¶ 10.  With respect to the notation on the Superintendent Hearing Disposition Rendered Form that defendant Furlani considered plaintiff's disciplinary history as part of the evidence, in support of his motion for summary judgment, defendant Furlani states that, "[c]onsideration of plaintiff's past disciplinary history should have been listed in Section B. [sic] Reasons for Disposition and not in Section A.  This was an error on my part."  Dkt. #42, ¶ 13.

After hearing the testimony and based on the Inmate Misbehavior Report, defendant Furlani found plaintiff guilty of violating Rule 105.12 and imposed a penalty

of two months keeplock confinement, two months loss of recreation, packages, commissary and phone privileges beginning December 8, 2004 and continuing to February 8, 2004.  Dkt. #40, ¶ 27; Dkt. #42, ¶ 16.  On the Superintendent Hearing Disposition Rendered Form, Section B Reasons for Disposition, defendant Furlani noted that the reasons for the disposition were, "[t]o dissuade you from further possession [sic] gang related material.  To impress on you the seriousness of such an infraction, and to ensure your behavior conforms with institution rules."  Dkt. #26, p. 11; Dkt. #40, ¶ 26; Dkt. #42, ¶ 14.

Plaintiff was moved to keeplock confinement on December 8, 2004 and was thereafter transferred to the Special Housing Unit ("SHU") on December 9, 2004.  Dkt. #40, ¶ 28.  Plaintiff was advised of her right to appeal the determination to the Commissioner within thirty days of receipt of the disposition and signed the Hearing Disposition Rendered Sheet indicating that she had received a copy of the disposition dated December 8, 2004.  Dkt. #26, p.11; Dkt. #40, ¶ 29; Dkt. #42, ¶ 17.

Plaintiff exercised her right to appeal on an Appeal Form to Commissioner Superintendent's Hearing dated December 8, 2004.  Dkt. #26, p.9; Dkt. #40, ¶ 30; Dkt. #42, ¶ 18. On the Appeal Form, plaintiff identified the following specific grounds for her appeal:

> The grounds I would like to appeal my case of [sic].  Mr S. Frem. (illegible) [Furlani] judge me from [sic] my past displinary [sic] he didnt [sic] try to see if I was in a gang he looked at my past history which he say [sic] it on [sic] tape and judge [sic] me on that.  Not one of my ticketes [sic].

> Stated [sic] that I was in a gang a friend of minds [sic] sent me a photo which the facility allow [sic] in.  I had the photo on my wall.  I [sic] been confine [sic] since 94. Gangs were not out [sic].  When I was home [sic].  Please look into this matter for me.

Dkt. #26, p.9.  On or about January 21, 2005, Donald Selsky, Director Special Housing Unit/Inmate Discipline reversed the December 8, 2004 determination for the following reasons:

> Expert testimony should have been obtained regarding the content of the picture indicated in the misbehavior report. Additionally, inmate's prior disciplinary record should not have been cited in statement of evidence relied upon.

Dkt. #26, p. 7.  Moreover, Director Selsky ordered that records containing references to the December 8, 2004 Superintendent's Hearing were to be expunged.  *Id*.  Plaintiff was discharged from SHU on January 26, 2005 after having served forty-nine (49) days of the sixty (60) day penalty.  Dkt. #1, ¶ 14.

In support of defendants' motion for summary judgment, defendant Durfee asserts that a search of Albion's records reveals that she did not receive any correspondence from plaintiff with respect to the allegations in the complaint.  Dkt. #41, ¶ 5.  None of the written complaints (letters) submitted by plaintiff were addressed to defendant Durfee.  *Id*. at ¶ 6.  In fact, the documents maintained at Albion reveal that the Deputy Superintendent for Security Services J. Slawatycki investigated and responded to plaintiff's complaints submitted while plaintiff was held in SHU.[2]  *Id*. at ¶ 7.

---

[2] The Court notes that as part of defendants' Rule 26 disclosures, there are three handwritten letters from plaintiff directed to Deputy Superintendent for Security Services, J. Slawatycki, dated December 13, 2004, on or about January 12, 2005 and

Accordingly, defendant Durfee maintains that she has no personal knowledge of the claims asserted by plaintiff.  *Id*. at ¶ 8.

## **DISCUSSION AND ANALYSIS**

Plaintiff claims that defendants' answers should be stricken and that she is entitled to summary judgment because the affirmative defenses interposed by the defendants are without merit.  Dkt. #34.  Specifically, the sole basis for her motion to strike and for summary judgment, is plaintiff's affidavit which purports to recite and reply to the affirmative defenses pleaded in defendants' answers.  Dkt. #35.  In her affidavit, plaintiff endeavors to factually dispute each of the affirmative defenses by merely reciting the factual allegations pleaded in her complaint.

Defendants argue that they are entitled to summary judgment principally on the ground that plaintiff received all the due process required under the Fourteenth Amendment.  Additionally, defendants claim the plaintiff's forty-nine (49) day confinement in SHU did not violate her due process rights.  In the alternative, defendants argue that plaintiff's claims against defendant Durfee must fail due to a lack of her personal involvement, the claims against defendants Frost and Stickney must be dismissed for failure to state a cause of action and that all defendants are entitled to

---

on or about January 20, 2005, wherein plaintiff expresses her disagreement with the determination and raises what J. Slawatycki considered to be issues to be presented on an appeal.  Dkt. #26, pp.25-31.  In response to these letters, J. Slawatycki reminded plaintiff of the appeal process available to her and further reminded her that she had an appeal pending.  *Id*.

qualified immunity.  Because the Court agrees with defendants and finds that plaintiff received all the due process to which she was entitled under the Fourteenth Amendment and further, that plaintiff's forty-nine (49) day confinement in SHU did not violate her due process rights, the Court need not reach defendants' alternative bases for judgment as a matter of law.  Moreover, this Court's decision to grant summary judgment in favor of defendants renders plaintiff's motion to strike defendants' answers to the complaint and for summary judgment moot.

## **Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**<u>Due Process Claim</u>**

To state a cognizable § 1983 due process claim, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313, 316 (2d Cir. 1996).

**Liberty Interest**

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004), *quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995).  In assessing whether the discipline imposed rises to this level, the Court of Appeals for the Second Circuit has directed the district courts to consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical."  *Id., quoting Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999).  In light of this standard, the Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights" and has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical."  *Id*. at 64-65.

Notwithstanding the foregoing, courts in this Circuit "generally require that the duration of confinement be at least 100 days" to be categorized as constituting an "atypical and significant hardship."  *Palmer v. Goss*, No. 02 Civ 5804(HB), 2003 WL 22327110, at * 6 (S.D.N.Y. Oct. 10, 2003), *aff'd, Palmer v. Richards*, 364 F.3d 60 (2d Cir. 2004); *Smith v. Taylor*, No. 03-0202, 2005 WL 2019547 (2d Cir. Aug. 23, 2005) (determining that 45 days disciplinary confinement in SHU, absent evidence of

conditions more onerous than those generally present in the SHU, was insufficient to establish a protected property interest); *Sims v. Artuz*, 230 F.3d 14, 24 (2d Cir. 2003) (vacating dismissal of, *inter alia*, procedural due process claims, stating, during little more than a 4½ month period, Sims was sentenced to SHU for a total of nearly 3½ years); *Durran v. Selsky*, 251 F.Supp.2d 1208, 1214 (W.D.N.Y. 2003), *quoting*, *Tookes v. Artuz*, No. 00CIV4969, 2002 WL 1484391, at * 3 (S.D.N.Y. July 11, 2002) ("[c]ourts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days or less, absent additional egregious circumstances, does not implicate a liberty interest."); *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000) (instructing district courts to develop detailed factual records "in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days"); *cf. Prince v. Edwards*, No. 99CIV8650, 2000 WL 633382 (S.D.N.Y. May 17, 2000) (suggesting that any period of segregation of one year or less affords no protected liberty interest).

Here, following a Tier III disciplinary hearing, plaintiff was ordered to be confined to SHU for two months, and plaintiff also lost her recreation, packages, commissary and phone privileges for two months. Dkt. #40, ¶ 27. However, because the Director of Housing/Inmate Discipline, Donald Selsky, reversed the hearing determination, plaintiff was confined to SHU from December 8, 2004 until January 26, 2005, forty-nine (49) days.[3] Dkt. #1; Dkt. #40, ¶ 31. The Court notes that there is no evidence in the record before it to suggest that plaintiff ever filed any complaints about

---

[3] Plaintiff was moved to keeplock confinement on December 8, 2004 and was thereafter transferred to SHU on December 9, 2004. Dkt. #40, ¶ 28.

the conditions in SHU.  Moreover, plaintiff's complaint is utterly devoid of any allegations that her confinement in SHU imposed an atypical and significant hardship on her in relation to the ordinary incidents of prison life.  *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).  Accordingly, the Court finds that plaintiff has failed to demonstrate that the conditions of the disciplinary confinement created a constitutionally protected liberty interest and on that basis, defendants' motion for summary judgment is granted.

### **Procedural Safeguards**

In *Wolff v. McDonnell*, the Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied.  418 U.S. 539 (1974).  Specifically, the Supreme Court identified the following procedures:  advance written notice of the claimed violation or charges; a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action taken; the opportunity for an inmate to call witnesses and present documentary evidence in his/her defense, provided that such a process would not jeopardize institutional safety.  *Id*. at 563-66.

Here, plaintiff's chief complaint is that there was no investigation conducted with respect to whether the person in the photograph was, in fact, displaying a gang sign.  Moreover, plaintiff contends that there was no evidence to support the finding of guilt and that defendant Furlani erroneously concluded that plaintiff's

testimony denying any gang activity during the hearing was not credible. Dkt. ##1 and 48. There is no dispute that plaintiff received advance written notice of the charges (Dkt. #1, p.26; *but see*, Dkt. #40, ¶ 19) and was provided with the opportunity to call witnesses and to present documentary evidence in her defense. (Dkt. #26, p.14; Dkt. #40, ¶ 19; Dkt. #42, ¶ 7). Notably, plaintiff did not identify any witnesses to be called to testify at the December 8, 2004 hearing. Dkt. #26, p.14; Dkt. #40, ¶¶ 20 and 24; Dkt. #42, ¶ 7. Finally, as required under *Wolff*, the factfinder, defendant Furlani, issued a written statement outlining the evidence relied upon and the reasons for the disciplinary action taken. Dkt. #42, ¶¶ 9, 10, and 12-14.

      Moreover, although not specifically required by *Wolff*, plaintiff was provided with an opportunity to appeal the determination and she did in fact exercise that right to appeal and enumerated specific grounds for her appeal. Dkt. #26, p.9; Dkt. #40, ¶ 30; Dkt. #42, ¶ 18. Plaintiff's primary contention on appeal was that defendant Furlani improperly relied upon her prior disciplinary history in reaching the determination. Dkt. #26, p.9. On or about January 21, 2005, Donald Selsky, Director Special Housing Unit/Inmate Discipline reversed the December 8, 2004 determination for the following reasons:

> Expert testimony should have been obtained regarding the content of the picture indicated in the misbehavior report. Additionally, inmate's prior disciplinary record should not have been cited in statement of evidence relied upon.

Dkt. #26, p. 7. Moreover, Director Selsky ordered that records containing references to the December 8, 2004 Superintendent's Hearing were to be expunged. *Id*. As a result

of Director Selsky's reversal of the determination, the transcript was expunged and plaintiff was only required to stay in SHU for forty-nine (49) days of a sixty (60) day sentence. Thus, based on the foregoing, this Court finds that plaintiff was afforded all of the due process she was due under the Fourteenth Amendment. As a result, defendants' motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, defendants' cross-motion for summary judgment (Dkt. #39) is **GRANTED** and plaintiff's motion to strike defendants' answers to the complaint and for summary judgment (Dkt #34) is **DENIED** as moot.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

DATED:   Buffalo, New York
         December 3, 2008

                                                                   **s/ H. Kenneth Schroeder, Jr.**
                                                                   **H. KENNETH SCHROEDER, JR.**
                                                                   **United States Magistrate Judge**